UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES P. DYER,

                Petitioner,

v.

GARY RODEN,

                Respondent.

No. 13-cv-11285-IT

**REPORT AND RECOMMENDATION REGARDING PETITIONER CHARLES P. DYER'S HABEAS PETITION (#1)**

August 18, 2016

CABELL, U.S.M.J.

## I.    INTRODUCTION

The petitioner, Charles P. Dyer ("Dyer" or "the petitioner"), is serving a life sentence for first degree murder among other charges. Pending before the Court is his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). After careful consideration of the record, I recommend that the petition be DENIED.

## II.    FACTS

### A.  **The Underlying Crime**

As described by the SJC[1], the facts which the jury could have found are as follows:

> The events giving rise to the indictments took place on June 28, 1991, in the apartment of Carol Drew (Carol) in Fall River. The defendant was the long-time boyfriend of Carol's daughter, Janice

---

[1] Factual findings by state appellate courts are afforded a presumption of correctness that can be overcome only by clear and convincing evidence. *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002). In this case, the petitioner has not presented clear and convincing evidence to rebut the presumption that the SJC's factual findings are correct.

Drew (Janice).  As of June, 1991, Janice and the defendant had lived together for approximately eight years and they had a four year old daughter together, but around June 9, Janice left the defendant in Maine, taking their daughter with her.  She and the child came to the Fall River area, and by June 28, they were living in a homeless shelter in neighboring New Bedford.  The defendant was desperate to find Janice and their daughter.

Early in the morning of June 28, following a telephone call from the defendant, Carol told her son George Eldridge (George), who was staying with her, that the defendant was coming to the apartment.  The defendant arrived and said he had some important information for Roy Drew (Roy), another son of Carol.  Following a brief conversation, the defendant left, with plans to return thereafter to speak with Roy.  Later that morning, the defendant returned at the same time as Roy; the defendant told Carol, George, and Roy that he had compromising videotapes of Janice, and that he had shown them to the police.  Roy left to get Janice, leaving the defendant with George for several hours.

That afternoon, Carol, Roy, Janice, and the child rejoined George and the defendant in Carol's apartment.  Carol, Roy, Janice, George, and the defendant engaged in a tense discussion around the kitchen table regarding the defendant's desire to have Janice and the child return to live with him; Janice's refusal to do so; the Drew family's demands for financial support from the defendant; and the defendant's claim that his videotapes of Janice were damaging to her.  Sometime into the conversation, the defendant went to his car and retrieved a brown satchel and one videotape. He played a portion of it for Roy, George, and Janice; it showed Janice engaged in sexual acts.  When the Drews denied the videotape was damaging, the defendant returned to his car and came back with a small blue suitcase, containing additional videotapes.  He played the second videotape depicting Janice in sexual acts, and Roy, George, and Janice grew more upset.
The conversation resumed in the kitchen.  Janice said she wanted $7,000 from the defendant to move with the child and her brothers out of State, and resettle where he could not find them.  The defendant claimed to have a videotape of Janice with two men. When Janice, visibly upset, claimed she had been raped by the two men, the defendant acknowledged setting up the rape in order to record it.  He then said that he would give George the money Janice wanted, and that he intended to kill himself.  Janice watched the defendant walk to the brown satchel, open it, and pull out a gun.

George had been standing near the kitchen table with his head down, and when he looked up, he saw the defendant standing near the apartment door with a gun in his hand. Roy was next to the defendant. Roy stepped forward and told the defendant to give him the gun. The defendant took a step toward Roy, the gun fired, and Roy fell to the floor. George, standing on the other side of the table next to Janice, pulled her to the floor, and another shot was fired. George then stood up and lifted up one of the kitchen chairs, holding it in front of himself; the defendant shot George in the left hand. After George fell to the floor, the defendant kicked him and shot him in the shoulder. The defendant then went into the bedroom where Carol was holding the child. He pointed the gun at Carol, but it did not fire. Janice ran into the bedroom after the defendant and began hitting him on the back with her hands; the defendant turned, put the gun to her head, and "clicked it," but the gun again did not fire. The defendant hit Janice on the head with the gun, and she fell to the floor.

The defendant left the apartment. Carol yelled for someone to contact the police, and a neighbor did. The police arrived almost immediately. George survived his two gunshot wounds, but Roy died as a result of a gunshot wound to the chest. The police discovered the defendant's car parked near the apartment, and in it found many of the defendant's belongings, including at least four identification cards showing the defendant's photograph and a variety of names, none of them the defendant's.

*Commonwealth v. Dyer*, 460 Mass. 728, 730-32 (2011). Dyer testified on his own behalf at trial. He maintained that the Drew family became agitated after he played the videotapes and attacked him when he attempted to leave Carol's apartment. Dyer testified that Roy was shot accidentally during the struggle and that he shot George in self-defense. *Id.* at 732-33.

### B. State Court Proceedings

In 1994, Dyer was convicted in the Bristol County Superior Court of murder in the first degree, armed assault with intent to kill, unlawful discharge of a firearm, and unlawful carrying of a firearm. *Dyer*, 460 Mass. 728 (2011); *see also* Bristol Superior Court Docket in *Commonwealth v. Dyer*, No. BRCR 1991-28400. The petitioner appealed. On March 13, 1998, the SJC allowed the petitioner's Motion for Stay of Appeal. On March 16, 2004, Dyer filed a

motion for a new trial and the motion was remanded to the Superior Court.  On February 9, 2009, the Superior Court denied the motion for a new trial.  Dyer filed a timely notice of appeal. The SJC then consolidated the appeal from the denial of the motion for a new trial with the direct appeal.

Before the SJC, the petitioner argued that his convictions were infirm on six separate grounds: (1) the trial judge improperly closed the courtroom during the individual voir dire of prospective jurors; (2) the trial judge, outside the presence of the defendant, improperly questioned three jurors; (3) the trial judge wrongly refused to conduct an evidentiary hearing on two claims of juror bias (one with respect to the juror who had seen a witness at the women's prison, and the other with respect to a juror who did not disclose a romantic relationship with a guard at the prison where the petitioner was being housed); (4) the trial judge made several erroneous evidentiary rulings; (5) the trial court's jury instructions on malice, voluntary manslaughter, and self-defense were wrong; and (6) defense counsel was ineffective in many respects.

The SJC affirmed the petitioner's convictions in a reported decision.  *Dyer,* 460 Mass. 728.  On May 29, 2012, the United States Supreme Court denied the petitioner's petition for a writ of *certiorari.  Dyer v. Mass.*, 132 S. Ct. 2693 (2012).

**C.  Federal Court Proceedings**

On May 28, 2013, the petitioner initiated this federal matter by filing a petition asserting five claims for relief:

- **Claim 1:** Whether trial counsel's failure to investigate and present forensic evidence constituted ineffective assistance of counsel in violation of the petitioner's Sixth Amendment right to effective assistance;

- **Claim 2:** Whether the prosecutor erred in making certain statements during closing;

- **Claim 3:** Whether the petitioner's Sixth Amendment right to a public trial was violated when the trial judge questioned potential jurors in a non-public area of the court, thereby excluding the public from the voir dire without first making a finding that a partial or complete courtroom closure was justified;

- **Claim 4:** Whether the trial judge erred by failing to instruct the jury regarding self-defense; and

- **Claim 5:** Whether the petitioner's Sixth Amendment right to an impartial jury was violated where: a) the jury foreperson was the girlfriend of a prison guard who reportedly told others that the petitioner would "get what he deserves" and that he had the ability to call the jury foreperson to "find out what was going on" at the petitioner's trial; and b) another juror had worked at a prison during the time that Janice Drew was incarcerated there.

(Dkt. No. 1).

On August 2, 2013, the respondent filed a Motion to Dismiss, arguing that the petitioner had failed to exhaust his state court remedies with respect to claim 2 and a portion of claim 5. (Dkt. No. 15). The petitioner voluntarily withdrew the unexhausted claims. (Dkt. Nos. 21, 22, and 29).

On September 18, 2015, the petitioner filed his Memorandum of Law in support of his *habeas* petition. (Dkt. No. 60). For whatever reason, though, the petitioner's memorandum did not address claims one and four. On November 25, 2015, the respondent filed its opposition and it too did not address claims one and four, presumably because the petitioner did not address them. (Dkt. No. 63). As neither party has addressed these claims, though, the Court will treat them as waived.[2] *Smiley v. Maloney*, No. 01-11648-GAO, 2003 WL 23327540, at *15 (D. Mass. Oct. 31, 2003), aff'd, 422 F.3d 17 (1st Cir. 2005) (finding claim waived where "petitioner has

---

[2] The Court cannot discern from the docket why the petitioner did not brief claims one and four. The Court presumes from the petitioner's thorough and well-reasoned discussion of claims three and five that the omission was intentional. (Dkt. No. 60).

not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point").

As a result, the claims left for the Court to consider are whether the petitioner's Sixth Amendment right to a public trial was violated when the trial judge questioned potential jurors in a non-public area of the court (claim 3), and whether the petitioner's Sixth Amendment right to an impartial jury was violated where one of the jurors was dating a prison guard who made comments about his ability to speak with the juror about the trial (part of claim 5).  (Dkt. No. 1).

### III.    DISCUSSION

#### A.  Standard of Review

 "Federal *habeas* is not an ordinary error-correcting writ."  *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989).  It "exists to rescue those in custody from the failure to apply federal rights, correctly or at all."  *Id*.  *Habeas* relief is only available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  *Swarthout v. Cooke*, 562 U.S. 216 (2011) (internal quotations and citations omitted).  A writ of *habeas corpus* thus "does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

A federal court may grant a writ of *habeas corpus* only if the underlying state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

This Court's first task is to "determine what arguments or theories supported the state court's decision," and then determine whether "those arguments or theories are inconsistent with the *holding* in a prior decision of [the Supreme] Court." *Wetzel v. Lambert*, 132 S. Ct. 1195, 1198 (2012) (emphasis added) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta'" of the Supreme Court decisions.)).  A "state court is afforded deference and latitude." *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014) (citation omitted).  A state court decision is "contrary" to clearly established federal law only where "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A decision is an "unreasonable application" of federal law where "the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id*.  The magnitude of the error "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Brown v. Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002)).

The Court also considers the state court's factual findings, which must be accorded "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015).  State court factual findings are presumed to be correct and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  The Court cannot conclude that the state court's factual findings are unreasonable "'merely because [the Court] would have reached a different conclusion in the first instance.'" *Brumfield,* 135 S.

Ct. at 2277 (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "If reasonable minds reviewing the record might disagree about the [correctness of the] finding in question," then the state court's factual findings will be upheld.  *Id.*

Further, where the reviewing court finds that the state court committed an error, *habeas* relief is only appropriate if the error had "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  In other words, *habeas* relief cannot be granted for "harmless" errors, which are defined as those errors that did not impact the verdict.

Applying these principles to the present case, the Court discerns no error in the SJC's consideration and adjudication of the petitioner's claims.

### B.  Claim 3: In Chambers Voir Dire

The petitioner argues that his Sixth Amendment right to a public trial was violated when the trial judge conducted voir dire in a non-public area of the court.  The petitioner concedes that his attorney did not object to this voir dire procedure.  However, during voir dire, the petitioner's counsel stated that the petitioner was uncomfortable.  The trial judge then asked, "[W]hat seems to be your problem?"  The petitioner responded, "I have to go to the bathroom.  I have to drink water like anybody else.  My legs are bleeding from the shackles up and down.  It's just that, your Honor, it's really being heard."  The petitioner argues that the SJC erred when it held that these statements did not constitute a valid objection to the voir dire procedure.  The petitioner also argues that, to the extent the Court believes that the SJC's procedural waiver determination affords an adequate and independent state ground for its decision, the petitioner can demonstrate cause to reach the merits of his claim based upon his trial attorney's ineffective assistance in failing to object.

The factual basis for the petitioner's claim, taken from the SJC decision, is as follows:

> The record shows prospective jurors were questioned by the trial judge one at a time in the presence of the defendant, counsel for both sides, the court reporter, and the court clerk.  The trial took place during the summer and the court room was warm.  The judge explained to the defendant the reason for the move as follows: "We have chosen to have it in chambers with as comfortable a proceeding as possible as opposed to the courtroom. I know the air conditioning isn't everything we would like it to be.... Considering the building, this is the best we can do."

*Dyer*, 460 Mass. at 734.

> Although he brought up other complaints, neither the defendant nor his counsel raised any concern about the judge's decision to conduct individual voir dire in her lobby.

*Id*. at 736 n. 8.

In its analysis of this claim, the SJC described the legal question as one of waiver.  It nonetheless also "applied an additional layer of review, for a substantial likelihood of a miscarriage of justice."  *Id*. at 735 n. 7 (citing *Commonwealth v. Horton*, 434 Mass. 823, 832 (2001)).  The SJC explained that:

> To do otherwise would require either that we allow no review of a waived constitutional claim, or that we apply a structural error analysis despite the waiver.  The former option would give less protection to waived constitutional rights than to ordinary claims of unpreserved errors in the context of a G.L. c. 278, § 33E, review.  The latter would require us to ignore—at great cost to the public interest in the finality of verdicts—the established rule that public trial rights may be waived.

*Id*.  The SJC then affirmed that its two-step analysis did not change the fact that "the principal issue in regard to the defendant's claim is one of waiver."  *Id*.  It went on to analyze the petitioner's claim as follows:

> The closing of a proceeding to the public may implicate rights guaranteed by the First and Sixth Amendments to the United States Constitution.  The public trial right applies to jury selection proceedings.  A violation of the right to a public trial "is a structural error and not susceptible to harmless error analysis."

> However, the court considers "whether the defendant raised this
> issue in a timely manner because 'the right to a public trial, like
> other structural rights, can be waived.'" Unlike waiver of the right
> to counsel, this court has not required that waiver of public trial
> rights be memorialized in a colloquy.
>
> The defendant had a right to individual voir dire in open court. The
> record does not suggest the requirements were met for a partial
> closure of the court, *i.e.,* a substantial reason for closure; closure
> no broader than necessary to protect the interest likely to be
> prejudiced; consideration of reasonable alternatives; and adequate
> judicial findings. However, the defendant waived his rights by
> consenting to the proceedings. He was present throughout voir
> dire, and, in light of his complaints of discomfort, on balance was
> helped more than harmed by the setting. The defendant points to
> no factors suggesting, notwithstanding the waiver, that a
> substantial likelihood a miscarriage of justice occurred. We
> therefore decline to order a new trial.

*Id*. at 736-37 (internal citations omitted).

Subject to certain limited exceptions, federal *habeas* review of a claim is precluded when

a state court has decided that claim on the basis of an adequate and independent state-law ground

that is firmly established and regularly followed. *Coleman v. Thompson*, 501 U.S. 722, 729

(1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). One common example of an adequate and

independent state law ground for a decision is when "a state court decline[s] to address a

prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."

*Coleman*, 501 U.S. at 729-30. The First Circuit "[has] held, with a regularity bordering on the

monotonous, that the Massachusetts requirement for contemporaneous objections is an

independent and adequate state procedural ground, firmly established in the state's jurisprudence

and regularly followed in its courts." *Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010)

(citations omitted); *see also Horton v. Allen*, 370 F.3d 75, 80-81 (1st Cir. 2004) ("The SJC

consistently enforces the rule that unpreserved claims are forfeited, and enforced the rule in the

instant case.  The SJC did review the claim for a 'substantial miscarriage of justice,' but this sort of limited review does not work a waiver of the contemporaneous objection requirement.").

In cases where the adequate-and-independent-ground rule applies, "federal *habeas* review of the claim[ ] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

### 1.  The Petitioner Has Not Shown Cause or Prejudice

In this context, "cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule.  Mere attorney error not amounting to ineffective assistance in a constitutionally significant sense is insufficient to constitute cause."  *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995).

Here, the petitioner argues that his failure to object to the in chambers voir dire was caused by ineffective assistance of counsel.  Ineffective assistance of counsel can be "cause" for a procedural default, but only where: 1) the attorney misconduct was so severe that it violated the Sixth Amendment; and 2) the ineffective assistance claim was exhausted in the state courts. *Janosky*, 594 F.3d at 44.  Demonstrating a Sixth Amendment violation, in turn, requires a showing that: 1) the representation by the petitioner's trial counsel fell "below an objective standard of reasonableness;" and 2) there is a "reasonable probability" that counsel's error influenced the outcome of the proceedings.  *Id*. at 45 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

Without addressing the government's non-exhaustion argument, the Court finds that the petitioner's ineffective assistance claim fails on the merits.  First, it is far from clear that counsel's failure to object amounted to deficient performance.  At least one federal appellate court has refused to grant relief based on a claimed public trial violation in the context of a jury selection procedure similar to the one used here.  *See United States v. Bansal*, 663 F.3d 634, 661 (3rd Cir. 2011) (describing jury selection procedure where "members of the voir dire panel were individually questioned about more sensitive subjects—in the presence of the defendants and attorneys for both sides—in a closed jury room adjacent to the courtroom" and stating, "we are aware of no case holding that such procedures violate the Sixth Amendment").  And the SJC held in two recent matters that it was neither constitutionally deficient performance, nor even an uncommon practice among competent defense attorneys, not to object to courtroom closures during empanelment.  *See Commonwealth v. Alebord*, 467 Mass. 106, 113-14 (2014); *Commonwealth v. Morganti*, 467 Mass. 96, 104 (2014).

The Court accepts as true the representation of the petitioner's trial counsel that he did not consciously weigh the possibility of objecting to the closure of the courtroom and that, in fact, it "did not occur to [him] that there was a valid Sixth Amendment objection to the closed individual voir dire" procedure.  (Dkt. No. 60-1).  Even so, the Court finds that it was not unreasonable for counsel to have acted (albeit unintentionally) in a manner approved in multiple SJC and First Circuit decisions.  *See Wilder v. United States*, 806 F.3d 653, 660-61 (1st Cir. 2015) (concluding in §2255 case that no cause, on basis of ineffective assistance of counsel, could excuse procedural default for failing to object to conducting individual voir dire in jury selection room); *Bucci v. United States*, 662 F.3d 18, 31-32 & n.11 (1st Cir. 2011) (finding no

ineffective assistance of counsel even when counsel did not recognize partial courtroom closure during jury selection as potential Sixth Amendment violation).

Second, apart from whether counsel's performance was constitutionally subpar, the petitioner has failed to demonstrate actual prejudice[3] attributable to the closure, which is an element of his ineffective assistance claim and a requirement in *habeas* cases generally. That is, he has failed to explain how the outcome of his trial was affected by the jury selection procedure or counsel's failure to object to it. *See Wilder*, 806 F.3d at 660 (concluding, in § 2255 case, that petitioner could not show prejudice where individual voir dire was conducted in juror deliberation room instead of at a sidebar conference in open court because the "only difference between these procedures and a sidebar conference was that members of the public could not observe the individual questioning from their seats in the spectator gallery and attempt to discern facial expressions or body language"). The petitioner's attorney participated in the jury selection process and had the opportunity to challenge members of the jury venire. It is difficult to imagine what the petitioner's attorney would have done differently had jury selection taken place in the courtroom rather than the trial judge's chambers. Even assuming that the location used for voir dire would have changed the composition of the jury, there is nothing to suggest that a different jury would have led to a different verdict.

---

[3] Citing to *Owens v. United States*, 483 F.3d 48 (1st Cir. 2007), the petitioner argues that he need not demonstrate actual prejudice because "denial of the right to public trial is structural error, not subject to harmless error analysis." *Owens* is distinguishable because it involved a complete ban on spectators in the courtroom during voir dire; there was evidence to suggest that the petitioner's family actually had attempted to enter the court and were turned away. In contrast, in this case the individual voir dire took place in a non-public area of the court but there is nothing to indicate that the actual courtroom was closed to the public or that any particular member of the public was actually denied entry. On similar facts, the First Circuit held that "conducting the individual voir dire in the jury deliberation room was essentially the 'functional equivalent' of a sidebar conference" and did not constitute a *per se* prejudicial structural error. *Wilder*, 806 F.3d at 660-61.

### 2. The Petitioner Has Not Established His Conviction Was a Miscarriage of Justice

The petitioner also has not shown that he has suffered a miscarriage of justice, which "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks*, 55 F.3d at 717.  The petitioner has not argued in his memorandum of law in support of his *habeas* petition that he is actually innocent.  Further, the fact that the evidence against the petitioner at trial was strong suggests that an actual innocence claim would be unlikely to succeed.

### 3. This Court Cannot Reach the SJC's Procedural Waiver Determination

The petitioner's argument that the SJC unreasonably found that he had failed to object to the voir dire process is not properly before this Court.[4]  Federal *habeas* courts generally cannot review whether a state court reasonably found that a petitioner failed to preserve an issue for appeal through a proper objection.  In fact, federal appellate courts from around the nation have warned that federal *habeas* courts "'do[ ] not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995)); *see also Logan v. Gelb*, 790 F.3d 65, 70 (1st Cir. 2015) (per curium) ("we ordinarily may not second guess a state court's rejection of a claim on the basis of an independent and adequate state procedural rule"); *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000) (stating same principle); *Clemons v. Luebbers*, 381 F.3d 744, 748, 750-51 (8th Cir. 2004) (holding that, where state court unequivocally applied procedural bar to petitioner's claim, district court erred in finding "that this claim was properly preserved at trial, and that the

---

[4] There is one narrow exception to the rule that federal courts may not second-guess a state court's finding of a procedural shortcoming.  *Lee v. Kemna* holds that in "exceptional cases," where a state court engaged in an "exorbitant application of a generally sound rule," a *habeas* court may reach the merits of a claim.  534 U.S. 362, 376 (2002).  This is not that exceptional case.

Missouri courts improperly applied a procedural bar;" explaining that "federal courts do not look at whether state courts have correctly applied their own procedural rules" but "simply determine whether those procedural rules were applied to bar the claim"); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("[The petitioner] argues that the trial court improperly applied [a state procedural rule] in holding [his] claims defaulted, since the conditions for inferring waiver under the rule were not satisfied. Federal *habeas* courts lack jurisdiction, however, to review state court applications of state procedural rules.").

      For purposes of the adequate and independent state law doctrine in *habeas* cases, the question properly before a federal court is whether the state law ground for the decision was an adequate and independent basis for the judgment.[5]  *Hodge v. Mendonsa,* 739 F.3d 34, 43-44 (1st Cir. 2013); *see Beard v. Kindler*, 558 U.S. 53, 60 (2009) (adequacy of state procedural ruling is a question of federal law); *Douglas v. Alabama*, 380 U.S. 415, 422 (1965) (distinguishing between whether an objection was adequately made, a state-law issue as to which state-court decisions must be respected—and whether a state procedural bar is itself adequate, a federal-law issue). First Circuit case law forecloses any conclusion that the Massachusetts contemporaneous objection rule is "inadequate" or not "independent."  As the Court explained in *Hodge*:

> There is no doubt [Massachusetts's contemporaneous objection rule] meets th[e] requirements [of adequacy]. In fact, the state procedural bar at issue here bears none of the hallmarks of inadequacy that would allow [a federal *habeas* court] to reach the merits. It was neither sporadically applied, nor irregularly put into practice. [Moreover, the First Circuit has] held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate

---

[5] To the extent that the petitioner is arguing that the SJC's consideration of whether this issue presented a substantial risk of miscarriage of justice was a waiver by the SJC of the petitioner's failure to timely object so as to permit him to raise the issue in federal *habeas* corpus proceeding, this argument fails.  *See Puleio v. Vose*, 830 F.2d 1197, 1200 (1st Cir. 1987) ("Massachusetts law provides that the SJC may reach the merits of an appeal, notwithstanding procedural default, to determine whether a miscarriage of justice likely occurred . . . .  We have repeatedly held, and today reaffirm, that SJC review under the discretionary state miscarriage of justice standard will not suffice, in and of itself, to bypass the Commonwealth's contemporaneous objection rule.").

> state procedural ground, firmly established in the state's
> jurisprudence and regularly followed in its courts. The Supreme
> Court has repeatedly counseled that restraint is necessary to accord
> appropriate respect to the sovereignty of the States in our federal
> system.

739 F.3d at 44 (citations and quotations omitted).  Accordingly, the petitioner's third claim is

outside the scope of *habeas* review and therefore should be denied.

### C.  <u>Claim 5: Denial of Evidentiary Hearing Regarding Juror who was Dating Prison Guard</u>

The petitioner argues that his Sixth Amendment right to an unbiased jury was violated

because the jury foreperson was dating a prison guard at the prison where the petitioner was

housed pretrial.  The guard stated that he could obtain information about the trial from the jury

foreperson.  The petitioner argues that the SJC erred in affirming the trial court's denial of the

petitioner's request for an evidentiary hearing because the SJC should have applied *Remmer v.*

*United States*, 347 U.S. 227 (1954), which entitles a criminal defendant to a hearing as a matter

of course where a juror has discussed the defendant's case with a third party.

The factual basis for this claim, taken from the SJC decision, is as follows:

> [Juror D] at the time of trial, was living with a man who worked as
> a guard at the jail where the defendant was then being held.  The
> defendant proffered evidence in his motion for a new trial that the
> guard disliked the defendant and was overheard saying he knew
> the defendant would "get what he deserves" because his (the
> guard's) girlfriend was on the jury.  The guard allegedly stated he
> could telephone his girlfriend to find out what was going on, but
> added that he would not do so.  Juror D did not disclose any
> relationship to a person in law enforcement during empanelment,
> but she was not asked to do so as the juror questionnaire asked
> only about family relationships with members of law enforcement,
> and not other relationships, even if intimate.

*Dyer*, 460 Mass. at 740.

16

The SJC analyzed the petitioner's claim as follows:

> With respect to Juror D, the defendant's proffer did not sustain his burden to show pretrial bias.  In individual voir dire during empanelment, Juror D assured the judge that she would have no problem being fair and impartial in the trial, and the judge found she stood indifferent.  The defendant offered no evidence that Juror D was aware of the guard's negative opinion of the defendant, or that the juror shared his opinion of this defendant or of defendants generally.

*Id*. at 741.

The Sixth and Fourteenth Amendments guarantee the right to trial by an impartial jury. An impartial jury is one that is "'capable and willing to decide the case solely on the evidence before it.'"  *United States v. Villar*, 586 F.3d 76, 84 (1st Cir. 2009) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).  "[A]n external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury."  *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014) (citations omitted).  Under *Remmer v. United States*[6], 347 U.S. 227 (1954), "egregious tampering or third party communication that directly injects itself into the jury process" entitle a criminal defendant to both an evidentiary hearing regarding potential juror bias and a rebuttable presumption that the tampering or communication prejudiced the defendant. *United States v. Bradshaw*, 281 F.3d 278, 287-88 (1st Cir. 2002) (citing *United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990)).  "[T]o be entitled to the *Remmer* presumption and a *Remmer* hearing, a defendant must first establish both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict."  *Barnes*, 751 F.3d at 244.

---

[6] The First Circuit has noted that there is an ongoing debate amongst the circuit courts regarding the "continued vitality" of the *Remmer* presumption, *United States v. Tejeda*, 481 F.3d 44, 51 (1st Cir. 2007), but thus far has not had to decide the issue directly because the cases in which the presumption has been invoked have been factually distinguishable from *Remmer*.  The Court assumes for purposes of this decision that the *Remmer* presumption remains good law in this Circuit.

The substance of the petitioner's argument is that the SJC should have treated the saga of the juror and the prison guard as a *Remmer* issue, but did not. This Court does not agree. In order to invoke *Remmer*, the petitioner was required to make a showing that the jury foreperson had case-related discussions with a third party, the guard. Instead, the petitioner offered evidence that the guard, who was not on the jury, insinuated that he could (but would not) ask a juror about the case. The prison guard's statements may have been unprofessional, but they do not establish that the jury foreperson had any discussions with anyone about the petitioner's case. In fact, if the prison guard is taken at his word, his comments establish that he did not and would not discuss the case with his girlfriend, the jury foreperson.

Outside the *Remmer* context, there is no constitutional right to an evidentiary hearing to assess a claim of jury bias. *United States v. Burgos-Montes*, 786 F.3d 92, 111 (1st Cir. 2015) (noting, in the context of a juror bias claim, "The court may, but need not, convene a full-blown evidentiary hearing."); *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir. 1990) (same); *Sims v. Rowland*, 414 F.3d 1148, 1157 (9th Cir. 2005) (refusing to grant *habeas* relief on claim involving state court's refusal to convene evidentiary hearing on issue of juror bias, and noting the absence of any clearly established Supreme Court law on the subject). Thus, the SJC's affirmance of the trial court's denial of the petitioner's request for an evidentiary hearing was consistent with federal law.

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petitioner's *habeas* petition, (Dkt. No. 1), be DENIED in its entirety. The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must

specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  August 18, 2016