UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| CHARLES P. DYER, | * | |
|---|---|---|
| Petitioner, | * | |
| v. | * | Civil Action No. 13-cv-11285-IT |
| GARY RODEN, | * | |
| Respondent. | * | |

MEMORANDUM AND ORDER

July 12, 2017

TALWANI, D.J.

Currently pending before this court is Petitioner Charles P. Dyer's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [#1] alleging his state court conviction violated his Constitutional rights in several respects. The Magistrate Judge to whom the matter was referred recommends that the petition be denied. Report and Recommendation ("R&R") [#66]. Petitioner has timely filed objections. Objection to the Magistrate's Report and Recommendation ("Obj. R&R") [#72]. Having considered Petitioner's objections and reviewing the objected-to portions of the Report & Recommendation [#66] de novo, Fed. R. Civ. P. 72(b)(3), the court ADOPTS the recommendation of the Magistrate Judge and provides the following discussion as to the objections raised by Petitioner.

I.  Factual & Procedural Background

Petitioner notes one factual statement based on testimony admitted for a limited purpose that the Supreme Judicial Court ("SJC") nonetheless included in its decision, and that in turn was quoted in the Report & Recommendation [#66]. He does not otherwise object to the facts or

procedural history as recited by the Magistrate Judge, and does not challenge the underlying factual basis for his conviction. Obj. R&R 1-2 [#72].

II. Discussion

In addition to a general objection to the Magistrate Judge's recommendation that the Petition be denied, Obj. R&R 2 [#72], Petitioner asserts specific objections relating to claim 3 (Sixth Amendment Right to a Public Trial), and claim 5 (Sixth Amendment Right to an Impartial Jury).

   A. *Claim 3: Sixth Amendment Right to a Public Trial*

The Magistrate Judge found that claim 3, asserting Petitioner's Sixth Amendment right to a public trial, was procedurally defaulted because the SJC's underlying decision rested on an adequate and independent state-law ground that was both firmly established and regularly followed. R&R 10 [#66]. Moreover, when considering whether Petitioner had shown cause for the default and prejudice resulting therefrom, the Magistrate Judge concluded on the merits that Petitioner had shown neither, and recommended dismissal of claim 3. Id. at 11-14. Petitioner objects to this conclusion, arguing that the Magistrate Judge erred in finding, "without reference to any factors or circumstances" of the case, that trial counsel's failure to object to the closed voir dire was not objectively unreasonable and thus did not excuse procedural default. Obj. R&R 2-4 [#72].

A habeas petitioner may overcome procedural default by showing cause for the default and prejudice resulting therefrom.[1] Coleman v. Thompson, 501 U.S. 722, 750 (1991). To

---

[1] A petitioner may also overcome procedural default by showing that the failure to consider the claims would result in a fundamental miscarriage of justice. To establish a "fundamental miscarriage of justice," a petitioner must make a "colorable showing of factual innocence." McCleskey v. Zant, 499 U.S. 467, 495 (1991) (internal quotation marks omitted). This "narrow exception to the cause-and-prejudice imperative," is "seldom to be used, and explicitly tied to a

2

establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); Lee v. Corsini, 777 F.3d 46, 59 (1st Cir. 2015) (stating that ineffective assistance of counsel may constitute cause for default). A petitioner must also show "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotation marks omitted).

"[C]onstitutionally ineffective assistance of counsel, at trial or on direct appeal, in failing to preserve a claim for review may constitute cause for default." Lee, 777 F.3d at 59. However, to show cause for procedural default based on ineffective assistance of counsel, Petitioner must first show that his claims for ineffective assistance of counsel were exhausted below, and that his counsel's performance rose to the level of constitutional ineffectiveness. Murray, 477 U.S. at 488-89; Yeboah-Sefah v. Ficco, 556 F.3d 53, 76 (1st Cir. 2009). To show that counsel's performance rose to the level of constitutional ineffectiveness, Petitioner must demonstrate first that appellate counsel's performance fell below an objective standard of reasonableness. See id.; Smith v. Dickhaut, 836 F.3d 97, 103 (1st Cir. 2016); see also Padilla v. Kentucky, 559 U.S. 356, 371 (2010) ("Surmounting Strickland's high bar is never an easy task."). To analyze whether counsel's conduct was reasonable, courts apply a totality of circumstances test with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See Strickland v. Washington, 466 U.S. 668, 689 (1984); United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012). Second, Petitioner must demonstrate prejudice. To show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's

---

showing of actual innocence." Lee, 777 F.3d at 62 (quoting Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995)). Petitioner does not argue that he has shown actual innocence.

3

unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner asserts that trial counsel's statements that "it did not occur to [him] that there was a valid Sixth Amendment objection to the closed individual voir dire," Staiti Aff. ¶ 4 [#60-1], and that "[h]ad [he] been aware of the possibility of such an objection, [he] would have made it," id., foreclose the conclusion that trial counsel acted in an objectively reasonable manner, Obj. R&R 8-9 [#72]. But even allowing for the affidavit of Petitioner's trial counsel,[2] it does not follow that trial counsel's performance was constitutionally deficient. As the Magistrate Judge observed, where the courtroom closure was only partial, the First Circuit has not found trial counsel's failure to object objectively unreasonable. For example, in Bucci v. United States, where the courtroom closure was only partial, the First Circuit reasoned that "competent defense counsel . . . could have reasonably concluded that even a successful Sixth Amendment challenge to the partial courtroom closure would have done little to increase the defense's chances of securing a not-guilty verdict." 662 F.3d 18, 32 (1st Cir. 2011). And in Wilder v. United States,

---

[2] Federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 180-81 (2011). Petitioner asserts that notwithstanding this rule, the court may consider additional evidence to determine whether Mr. Dyer is "in custody in violation of the Constitution," entitling him to relief pursuant to § 2254(a). Mem. of Law Supp. Pet. 8 [#60] (citing Mosley v. Atchinson, 689 F.3d 838 (7th Cir. 2012)). But Petitioner puts the cart before the horse. In Mosley, the Seventh Circuit had already determined that Petitioner met the requirements of § 2254(d), and the only remaining question was whether petitioner was "actually entitled to relief—whether under 2254(a) he is in custody in violation of the Constitution or laws or treaties of the United States . . . ." Id. at 853. As set forth above, Petitioner cannot clear the hurdle of § 2254(d), and consideration of new evidence at this stage is therefore inappropriate. Nevertheless, even allowing for trial counsel's affidavit, as the Magistrate Judge did in the R&R, Petitioner fails to show that trial counsel's performance was constitutionally deficient. See Bucci, 662 F.3d at 31.

the "first phase of jury selection took place in open court," and only the "individual voir dire" took place in the jury deliberation room. 806 F.3d 653, 657 (1st Cir. 2015). The First Circuit stated that "conducting the individual voir dire in the jury deliberation room was essentially 'the functional equivalent' of a sidebar conference," and was therefore, "at most a partial closure" of the courtroom. Id. ("The only difference between [voir dire in the jury deliberation room] and a sidebar conference was that members of the public could not observe the individual questioning from their seats in the spectator gallery and attempt to discern facial expressions or body language, and the district court did not err in finding no functional difference between the two."). Under these circumstances, even where "counsel's failure to object [to courtroom closure for voir dire] was due to ignorance of law[,] . . . . [o]bjectively reasonable counsel could have made a strategic choice not to object to the selection procedure here . . . ." Id. at 660.

At its core, Petitioner's objection can fairly be read to take issue with the underlying conclusion that the procedure employed in his case was only a partial closure, and therefore did not amount to a structural error. Inherent in this objection is the same concern raised by Judge Torruella in his concurring opinion in United States v. Wilder—that conducting even a portion of voir dire outside the public view, especially when that portion (individual voir dire) is the "most critical component[] of the jury selection process . . . undercut[s] the Sixth Amendment guarantee to a public trial and chipped away at the constitutional protections articulated in Owens." 806 F.3d 653, 661, 664 (1st Cir. 2015) (Torruella, J., concurring). However, given that the voir dire procedure in Petitioner's case was almost identical to the procedure employed in Wilder, First Circuit precedent binds this court.[3]

---

[3] Further, even if this case were more closely aligned with the facts of Owens v. United States, 483 F.3d 48 (1st Cir. 2007), as Petitioner asserts in his objections, Obj. R&R 9-10 [#72], that would not change this court's analysis. Until recently, the First Circuit directed that where a

5

Had Petitioner shown that his trial counsel's performance was constitutionally deficient, he would still be required to demonstrate prejudice, a showing he has failed to make here. He has provided no explanation for how the individual voir dire or his counsel's failure to object to that procedure affected either the composition of the jury or the outcome of his trial. For similar reasons, Petitioner also has not shown prejudice resulting from the procedural default. Because Petitioner cannot demonstrate cause or prejudice, he cannot surmount the procedural default, and claim 3 is dismissed.

    B. *Claim 5: Sixth Amendment Right to an Impartial Jury*

The Magistrate Judge also found that with respect to claim 5, regarding Petitioner's Sixth Amendment right to an impartial jury, the SJC did not violate clearly established federal law in failing to grant an evidentiary hearing on Petitioner's claims relating to the jury foreperson's relationship. R&R 18 [#66]. The evidence showed that, "if the prison guard is taken at his word, his comments establish that he did not and would not discuss the case with his girlfriend, the jury foreperson,"[4] and without more, Petitioner had not raised a colorable claim of improper

---

complete closure had occurred, counsel's failure to object to that closure is presumed to be prejudicial. Owens, 483 F.3d at 66. That presumption no longer applies in light of the Supreme Court's recent ruling that prejudice is not presumed when a defendant raises a violation of a right to a public trial on a collateral claim of ineffective assistance of counsel. Weaver v. Massachusetts, 137 S. Ct. 1899 (June 22, 2017) (abrogating Owens, 483 F.3d 48).

[4] As part of the juror questionnaire, potential jurors were asked whether they had any "family relationships with members of law enforcement . . . ." Dyer, 955 N.E. 2d at 740. The jury foreperson answered that she did not, despite the fact that her live-in boyfriend was a corrections officer. To determine whether the jury foreperson answered this question correctly required the SJC to consider whether a live-in boyfriend was a "family relationship." It concluded that family relationships did not encompass "other relationships, even if intimate," and thus that the jury foreperson had not incorrectly answered the juror questionnaire. Id. The Magistrate Judge did not address this conclusion, and Petitioner does not object to it. This court, while unable to reach the issue, may not have reached the same conclusion as the SJC. In at least one section of the Massachusetts General Laws, "family" is defined to include just the sort of relationship the jury foreperson had with the corrections officer. See, e.g., Mass. Gen. L. ch. 209A § 1 (defining

communications. Id. Thus, he was neither entitled to the presumption of prejudice under Remmer v. United States nor otherwise entitled to an evidentiary hearing. Id. Petitioner objects to this finding and contends that the affidavits submitted with his Motion for New Trial "raised a colorable claim of improper communications," all that was required to raise the presumption of prejudice under Remmer. Obj. R&R 11 [#72]. He states that the SJC held him to a "higher standard than what the Supreme Court set" in Remmer and its progeny, and the denial of an evidentiary hearing on that basis was an unreasonable application of, or contrary to clearly established federal law. Id. at 15.

Under Remmer, "any private communication . . . with a juror during a [criminal] trial about the matter pending before the jury, is, for obvious reasons, deemed presumptively prejudicial." 347 U.S. 227, 229 (1954). Upon a showing of private communication with a juror, a court must hold a hearing, "with all interested parties permitted to participate," to establish whether such communication was harmless. Id. at 229-30. Two subsequent Supreme Court decisions narrowed this holding, refusing to apply a presumption of prejudice to all suggestions of possible communications. See United States v. Olano, 507 U.S. 725, 737-39 (1993); Smith v. Phillips, 455 U.S. 209, 215 (1982); see also United States v. Bradshaw, 281 F.3d 278, 287 (1st Cir. 2002) ("Although the Remmer court spoke in expansive terms, the Court's holding has been cabined."). In Phillips, the Court stated that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." 455 U.S. at 217. Thus, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such

---

"family or household members" as "person[s] who . . . (b) are or were residing together in the same household").

occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in Remmer and held in this case." Id. In light of Phillips and Olano, "[t]here is an ongoing debate in the circuits about the limits on and the ongoing vitality of the presumption of prejudice rule announced in Remmer." United States v. Tejeda, 481 F.3d 44, 51 (1st Cir. 2007). Regardless of that debate, under clearly established federal law, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Phillips, 455 U.S. at 215. Thus, "[w]here a colorable claim of jury taint surfaces . . . initially post-verdict, [a trial court] may convene an evidentiary hearing, but it is not obligated to do so." United States v. Tejeda, 481 F.3d 44, 52 (1st Cir. 2007) (internal citations and quotations omitted). A court has "broad discretion to determine the type of investigation which must be mounted." United States v. Boylan, 898 F.2d 230, 258 (1st Cir. 1990).

The trial court reviewed Petitioner's submission of evidence regarding juror bias, and "conclude[d] that no hearing [wa]s required because, on its face, the [evidence] disclose[d] no basis for implying misconduct." The SJC ratified this decision, and the Magistrate Judge found this ratification consistent with federal law. Petitioner does not object to the SJC's finding of facts, but rather the conclusion it drew from those facts, arguing that they raised "a colorable claim of jury taint" requiring investigation. But Petitioner has provided no evidence to contradict the SJC's finding that there was no evidence of actual communications between the prison guard and the juror. Moreover, he has not presented evidence indicating that it was unreasonable for the SJC to balance this lack of evidence against the juror's assurances that she could be impartial, and to conclude that the prison guard's wishful thinking about the result of Petitioner's trial was not evidence of impartiality or juror misconduct. Accordingly, the SJC's conclusion

that no further investigation was required in the absence of any colorable claim of jury taint was consistent with clearly established federal law, and claim 5 must be dismissed.

III. Conclusion

Accordingly, after consideration of Petitioner's objections, the court adopts the Report and Recommendation [#66]. Petitioner's Petition for Writ of Habeas Corpus [#1] is DENIED.

IT IS SO ORDERED.


Date: July 12, 2017 /s/ Indira Talwani
United States District Judge